## Conant's Administrator, et al. v. Mason, et al.

(Decided February 2, 1926.)

### Appeal from Bell Circuit Court.

1. Joint Adventures—Joint Adventure to Buy Interest in Land Held Not of Indefinite Duration.—Joint adventure to acquire certain interests in certain land is not presumed to continue indefinitely or to prevent individual action for all time with respect to subject-matter of agreement.

2. Trusts—Purchase by One Partner After Death of Another Not Violation of Partnership Relation.—Where partnership was formed to acquire interests in certain land, and several years after death of one partner another entered new agreement as result of which such interests were purchased, such purchase held not to create constructive trust, since original partnership was dissolved by death of partner.

N. J. WELLER for appellants.

W. W. POINTS, B. B. GOLDEN and J. C. JONES, warning order attorney, for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

This is an appeal from a judgment sustaining a demurrer to and dismissing the petition.

Briefly stated the facts are these: N. J. Weller and his associates procured 75 patents for vacant and unappropriated land in Bell county to be issued in the name of N. B. James upon surveys made and entered by said James in the year 1870. Before and at the time of the issual of the patents Weller and his associates had a

written contract with Ellen Britton and Alabama Bowling, sisters and the only heirs of N. B. James, deceased, by which they were to survey, ascertain and purchase from the James heirs the acreage held under good title, and to bear all expense incident to clearing up the title. Thereafter the associates of Weller dropped out of the arrangement and Weller, who was then the owner of said contract and patents, entered into a contract with the defendants Martin Head and Robert Mason by which they mutually agreed to carry out the original contract as far as could be done. Weller then produced a new contract from the James heirs in the name of Martin Head whereby Head, Mason and Weller were to carry out the original contract. Under the last contract Head, Mason and Weller did some surveying and other work necessary to clearing up the title, and it was ascertained that the patents would hold good on about five or six hundred acres of land. The time having expired in which the work was to be done, Ellen Britton refused to extend the time and the work ceased by mutual agreement of Head, Mason and Weller until such time as it would be convenient and advisable to buy out and receive a deed of conveyance from the James heirs. In the meantime it was agreed to take E. G. Conant, deceased, into the partnership arrangement for the purpose of financing the operation, and it was further agreed that Head, Mason, Conant and Weller should share equally in whatever land might be received or conveyed under the contract. After the contract was made Weller turned over to Head the 75 patents and all contracts and data Weller had in his possession, and Head and his codefendants now have the same in their possession. After the death of Conant the matter drifted along and Weller, Head and Mason discussed at various times the steps that might, or should be, taken in securing title from the James heirs. Conant, his personal representatives and Weller were at all times and are now ready, willing and able to perform their part of the contract by performing the labor and furnishing the means or money required to secure the titles. About a year and a half ago Head, in order to defraud and defeat Conant, his representatives and Weller, entered into a conspiracy with Franklin Mason and M. T. Ely by which they were to associate themselves together, buy out and take a deed of conveyance from the James heirs for all of said lands. Franklin Mason, a brother of defendant Robert Mason, and

M. T. Ely knew of the rights and interests of said Conant and Weller in the said transactions and contracts. Ely and Franklin Mason came to Weller, received from him all the information he had relative to the land and patents, and Weller informed Ely, Mason and Head that he was ready, willing and able to cooperate with them in buying out the James heirs. Weller then demanded the return of all the patents, contracts and data. Pursuant to the conspiracy Head, Franklin Mason and M. T. Ely procured deeds to be made by the James heirs to B. F. Kincaid, of Rose Hill, Virginia, and by Kincaid to them. By reason of these facts Head, Mason and Ely now hold the legal title in trust for the benefit of said Conant, Weller, Head and Robert Mason, and a judgment to that effect was prayed.

The following facts are pleaded in the amended petition: About three years prior to the 12th day of May, 1921, plaintiffs and the defendants Martin, Head, Robert Mason and Franklin Mason agreed among themselves that they would buy out the interests of the James heirs mentioned in the original petition. The original contract was between G. M. Adams, N. B. Hayes and N. J. Weller. After procuring the patents, and expending a large amount of money in surveying and investigating the title to the land, Adams and Hayes gave up in despair. Thereafter, Weller took up the matter with Martin Head and Robert Mason and procured a new contract with the James heirs, in substance and effect the same as the one originally made. After doing considerable work and spending a large amount of money they mutually agreed to take in E. J. Conant. Pursuant to this agreement Conant furnished some money to carry on the work, but died before anything was accomplished. The contract with the James heirs terminated and extension was obtained from Alabama Bowling and her husband, but Ellen Britton refused to give any further extension. Thereupon the efforts of Head, Robert Mason, Conant and Weller ceased for a time in connection with the matter. Thereafter it was agreed to do some further surveying and it was ascertained that there were about 600 acres of land to which the title was good. It was then discussed as to whether they would buy out the James heirs and take a quit claim deed for the 600 acres at a price of $3.00 per acre, and cut and sell the timber therefrom, or whether they would take a deed from the James heirs for all of their interests in the James sur-

veys, and a tenant was placed on the land to hold possession for the parties and the James heirs. It was while this state of affairs existed that the defendants entered into the conspiracy, and procured the deeds from the James heirs in the year 1921. Within a year and a half before the deeds were obtained, defendant Ely came to the office of Weller and stated that he was representing the James heirs in the land matters in which they were interested in Bell county, Kentucky, and sought and obtained all the information Weller possessed. Weller then told Ely that he and his associates would be glad to take the matter up with the James heirs and see if the matter could not be closed up on some terms fair to both sides.

The purpose of the suit is to enforce a constructive trust based on the theory that there was a partnership agreement to buy out the James heirs and that the defendants, in violation of that agreement, purchased the land and took title to themselves. Had it been alleged that while the partnership agreement was in effect the defendants took title to themselves, there might be some merit in the contention that the conveyances operated for the benefit of all the partners, or such of them as offered to contribute their portion of the purchase price. The case attempted to be pleaded is not one where plaintiffs and defendants were general partners in the buying and selling of lands, but one where the alleged partnership was formed to carry out a specific undertaking. It is not to be presumed that a joint adventure of that character is to continue indefinitely and thereby prevent individual action for all time to come with respect to the subject matter of the agreement. It appears from the pleadings that the original agreement between Weller and his associates was made in the year 1892. The matter drifted along for years and finally Wellers' associates gave up in despair. Thereafter Weller entered into a new contract with Head and Robert Mason. The contract with the James heirs expired and no extension could be obtained from Ellen Britton. By mutual consent the work then ceased. In the meantime Conant became a party to the agreement. He furnished some money to carry on the work, but died before anything was accomplished. There being no express agreement to the contrary, the partnership was dissolved by his death. Scholefield v. Eichelberger, 7 Pet. 586, 8 L. ed. 793. Thereafter the matter drifted along and it was several years after his death when the purchases were made

by defendants. On the whole we conclude that the facts pleaded show a purchase by the defendants long after the partnership had been dissolved and abandoned, instead of a purchase in violation of the partnership relation. It follows that the demurrer was properly sustained.

Judgment affirmed.